IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JESSE A. AGUILAR, ID # 28514-180, ) | |
| Petitioner, ) | |
| vs. ) | No. 3:05-CV-0679-N |
| ) | |
| DAN JOSLIN, ) | |
| Respondent. ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

I.  BACKGROUND

A.  Parties

Petitioner is a federal prisoner currently incarcerated in Seagoville, Texas. The respondent is Dan Joslin, Warden of the Seagoville facility.

B.  Nature of the Case

Petitioner has filed a pleading titled, "Expedited Motion Challenging the Manner, Location, and Conditions for Placement of CCC/Community Correction Center of Petitioners [sic] Sentence Pursuant to 28 U.S.C. § 2241"; he also paid the $5 filing fee associated with habeas actions.

"There is a circuit split" regarding what type of action a prisoner should file to contest "his CCC placement." *See Bilinsky v. Federal Bureau of Prisons*, No. CIV.A. 04-5379 (JEI), 2005 WL 1475558, at *3 n.4 (D.N.J. June 22, 2005) (discussing split). Some courts find § 2241 to be "an acceptable method to challenge" decisions of the Bureau of Prisons (BOP) regarding the placement in a CCC. *Id.* On the other hand, the Seventh Circuit has "held that an inmate must seek review

of a CCC placement by means of an ordinary 'civil suit,' and cannot proceed under the habeas statute." *Id.* (citing *Richmond v. Scibana*, 387 F.3d 602 (7th Cir. 2004)). The Fifth Circuit has not addressed this issue in the context of CCC placement.

A split also exists within this district. One court has followed *Scibana*, to support a finding that "[p]etitioner's challenge to the interpretation of 18 U.S.C. §§ 3621(b) & 3624(c) by the Bureau of Prisons must be brought in a civil action under the Administrative Procedures Act." *See Cheney v. United States*, No. 3:04-CV-2207-L, 2004 WL 2512266, at *1 n.2 (N.D. Tex. Nov. 5, 2004) (findings and recommendation), *accepted by* 2004 WL 2958390 (N.D. Tex. Dec. 20, 2004), *and accepted by* 2005 WL 130127 (N.D. Tex. Jan. 20, 2005). In a different action, another court construed "a civil 'Complaint'" that sought declaratory and injunctive relief related to CCC placement "as a petition for writ of habeas corpus under 28 U.S.C. § 2241." *See Neal v. Van Buren*, No. 4:04-CV-0315-Y, 2004 WL 1778917, at *1 & n.1 (N.D. Tex. Aug. 9, 2004) (findings, conclusions, and recommendation), *adopted by* 2004 WL 1969846 (N.D. Tex. Sept. 7, 2004). A third court considered the CCC placement issue in the context of § 2241 as filed by the petitioner. *See Hager v. United States Atty. Gen.*, No. 3:04-CV-0040-M, 2004 WL 691578, at *1-2 (N.D. Tex. Mar. 26, 2004) (findings, conclusions, and recommendation), *objections overruled by* unpub. order (N.D. Tex. Apr. 14, 2004).

Although the Fifth Circuit has not addressed the issue in the context of CCC placement, it has drawn a bright-line distinction between habeas actions and actions arising under 42 U.S.C. § 1983. *See Carson v. Johnson*, 112 F.3d 818, 820-21 (5th Cir. 1997). In *Carson,* the Fifth Circuit Court of Appeals addressed the differences between habeas and § 1983 actions and set out the recognized bright-line rule for determining the proper basis for a given action:

> Generally, § 1983 suits are the proper vehicle to attack unconstitutional conditions of confinement and prison procedures. A habeas petition, on the other hand, is the proper vehicle to seek release from custody.
> 
> The distinction is blurry, however, when, as here, a prisoner challenges an unconstitutional condition of confinement or prison procedure that affects the timing of his release from custody. We have adopted a simple, bright-line rule for resolving such questions. If "a favorable determination . . . would not automatically entitle [the prisoner] to accelerated release," the proper vehicle is a § 1983 suit.

112 F.3d 818, 820-21 (citations omitted).

In this case, petitioner's claims relate his release to a CCC to complete the remainder of his federal sentence, not his release from custody. Consequently, it appears that *Carson* would dictate that this action proceed as a non-habeas civil action. As noted in *Scibana*, however, petitioner "has not followed any of the rules applicable to prisoners' general civil litigation" such as "payment of the full docket fee, screening through of the three-strikes rule, and the other differences between requests for habeas corpus and general civil litigation."[1] *Scibana*, 387 F.3d at 606. Petitioner here has paid only the $5 filing fee associated with habeas actions, rather than the $250 filing fee for general civil actions. Although *Carson* may support construing the instant action as a civil action that is subject to the Prison Litigation Reform Act (PLRA), the Court declines to fully consider that possibility at this juncture. As fully discussed herein, the instant action is moot. The finding of mootness is not dependent upon whether the Court construes this action as a habeas action as presented by petitioner or as a general civil action. Accordingly, for purposes of these findings, the

---

[1] The many differences between habeas and general civil actions "have led [the Seventh Circuit] to say that a petition for habeas corpus may not be 'converted' to a civil suit, nor may district judges convert suits in the other direction." *Scibana*, 387 F.3d at 606 (citing *Copus v. Edgerton*, 96 F.3d 1038 (7th Cir. 1996); *Moore v. Pemberton*, 110 F.3d 22 (7th Cir. 1997)). Furthermore, by analogy to *Castro v. United States*, 540 U.S. 375 (2003), the Seventh Circuit stated that the courts "should leave that option to the litigants, after they know what is at stake." *Scibana*, 387 F.3d at 606. In this instance, there is no need to decide whether this Court should follow the Seventh Circuit's prohibition on converting a habeas action to a non-habeas civil action that is subject to Prison Litigation Reform Act.

3

Court will consider this action as arising under § 2241 and will cite and refer to such motion as a petition.

C. <u>Procedural History</u>[2]

Petitioner is serving a fifty-one month sentence for conspiracy to commit mail fraud, wire fraud, and securities fraud. He has a current projected good conduct release date of December 8, 2005. The BOP has designated petitioner to community confinement in a CCC in Houston, Texas, commencing on July 27, 2005, and lasting the final four and a half months of his term of imprisonment.

Petitioner filed the instant action pursuant to 28 U.S.C. § 2241 to challenge the manner, location, and conditions under which the BOP placed him in community confinement at the end of his term of imprisonment. He contends that his CCC placement has violated 18 U.S.C. §§ 3621(b), 3624(c). He specifically challenges a change in BOP policy that commenced December 13, 2002, through a memorandum that terminated a prior practice to place all inmates in CCC for the last six months of their sentence, regardless of the length of sentence. He claims that, under the new policy, his CCC placement has been reduced from six months to four and a half months.

Petitioner argues that the BOP has erroneously interpreted the applicable law, and that the December 13, 2002 memorandum changed the way the BOP implements BOP Program Statements 7310.04 and 7320.01. He claims that paragraph five of BOP Program Statement 7310.04 dated December 16, 1998, gives the BOP authority to place him in a CCC for six months or longer. Noting that several federal courts have found that memorandum invalid, he contends that the

---

[2] The procedural background is taken from petitioner's federal petition for writ of habeas corpus and respondent's answer.

application of the policy set forth in the memorandum violates his rights to due process because the change in policy failed to satisfy the notice and comment requirements of the Administrative Procedures Act (APA), and that the retroactive application of the December 2002 memorandum violates the Ex Post Facto Clause of the United Stated Constitution. He wants this Court to declare the December 13, 2002 change in policy invalid or illegal because it incorrectly interprets 18 U.S.C. §§ 3621(b) and 3624(c) and was implemented in violation of the APA.

Respondent asserts that petitioner has stated no valid basis for relief. He submits that any potential deficiencies of the December 13, 2002 memorandum were addressed by a recent regulation governing CCC placement decisions. He argues that the newly adopted rule moots "any asserted APA deficiencies in the December 2002 policy." (Resp.'s Answer at 9.) He further argues that the "February 2005 rule is a permissible interpretation of 18 U.S.C. §§ 3621(b) & 3624(c)" and does not violate the Ex Post Facto Clause. (*See id.* at 10-17.) Respondent clearly considers petitioner's eligibility for CCC placement to be based upon the February 2005 rule.

In view of the arguments of respondent, the Court must consider whether the adoption of the February 2005 regulation moots the instant challenge to the December 2002 policy. To facilitate such consideration, the Court first considers the historical placement policy of the BOP.

## II. PLACEMENT IN A COMMUNITY CORRECTIONS CENTER

Congress has enacted two statutory provisions relevant to placing federal inmates in non-prison sites such as a CCC or halfway house. Section 3621(b) of Title 18 of the United States Code grants general authorization to the BOP to "designate the place of imprisonment." Furthermore, § 3624(c) provides in pertinent part:

5

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

Prior to December 2002, the BOP considered all federal inmates, regardless of the length of their sentence, to be eligible for a maximum six-months placement at a CCC for the end of their sentences, even if such placement exceeded ten percent of the inmate's sentence. (*See* BOP Program Statement 7310.04, *Community Corrections Center (CCC) Utilization and Transfer Procedure* (Dec. 16, 1998), attached as Ex. A to Resp.'s Answer.)  However, in December 2002, the BOP changed its practice and began restricting CCC placements to the final ten percent of an inmate's term of imprisonment, not to exceed six months. (*See* Mem. dated Dec. 13, 2002, attached as Ex. B to Pet.)   "The December 2002 Policy spawned numerous legal challenges from inmates who previously would have been eligible for CCC placement at any time during their incarceration, including the last six months." *Pimentel v. Gonzales*, 367 F. Supp. 2d 365, 367 (E.D.N.Y. 2005) (collecting cases).  Consequently, in August 2004, the BOP proposed new regulations to govern CCC placement decisions and, after receiving public comment, the BOP published a new rule on January 10, 2005. *Id.* at 368-69.  The proposed regulation became effective on February 14, 2005. *Id.* at 369.  "The effect of the proposed rule was identical to the December 2002 Policy in that it limited BOP's ability to designate inmates to community confinement to the last ten percent of the prison sentence being served, not to exceed six months." *Id.* at 368.  Although the new policy "is indistinguishable in its effect on prisoners from the December 2002 Policy . . . [i]ts rationale . . . ha[s] completely changed." *See Moss v. Apker*, ___ F. Supp. 2d ___, ___, No. 05 CIV. 2676 (VM),

6

2005 WL 1593016, at *3 (S.D.N.Y. July 6, 2005). The new regulation is codified at 28 C.F.R. § 570.21(a). *See id.* at *8 n.3.

Because petitioner in this case specifically challenges a 2002 policy that has been superceded by a regulation which became effective in February 2005, the Court must consider whether the adoption of the February 2005 regulation moots the instant challenge to the December 2002 policy. *See Pimentel v. Gonzales*, 367 F. Supp. 2d 365, 372 (E.D.N.Y. 2005); *Yip v. Federal Bureau of Prisons*, 363 F. Supp. 2d 548, 551 (E.D.N.Y. 2005).

### III. MOOTNESS

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 396 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "If a dispute has been resolved or if it has evanesced because of changed circumstances, including the passage of time, it is considered moot." *American Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988). Furthermore, when a challenged regulation has been superceded by a new regulation, "the issue of the validity of the old regulation is moot, for this case has 'lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law.'" *Princeton University v. Schmid*, 455 U.S. 100, 103 (1982) (per curiam) (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam)). Fed. R. Civ. P. 12(h)(3) requires that federal courts dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter."

In *Yip*, the court found that "[p]etitioner's challenge to the December 20, 2002 policy has been mooted by the adoption of the February 14, 2005 policy" because "petitioner's transfer date has yet to be calculated, the February 14, 2005 policy is applicable, and this policy repairs the principal defect petitioner asserts in the 2002 policy." 363 F. Supp. 2d at 551. In *Pimentel*, the court noted:

> Although the Petitioner challenges the BOP's December 2002 Policy, his eligibility for transfer to a CCC is governed by the February 2005 Rule. Not only was the instant petition filed after the February 2005 Rule became effective, but March 30, 2005, the date at which Pimentel asserts he is eligible for a transfer to a CCC, is also subsequent to the effective date of the February 2005 Rule. In addition, Pimentel's transfer date to a CCC has yet to be calculated. Accordingly, Pimentel's challenge to the December 2002 Policy is moot.

367 F. Supp. 2d at 372 (citations omitted).

Petitioner filed the instant action in April 2005, after the February 2005 rule became effective. He asserts that, under the policy which existed prior to December 2002, he was eligible for a transfer to a CCC in early June 2005. (*See* Pet. at 2; accord Ex. A, attached to Pet.) Under the 2002 policy, the BOP calculated his eligibility date for CCC placement as July 27, 2005. (*See* Ex. A.) Although respondent agrees that petitioner's CCC placement "is currently scheduled to begin on July 27, 2005", his arguments indicate that such placement is based upon the February 2005 policy rather than the December 2002 policy. (*See* Resp.'s Answer at 9-17.)

In this case, petitioner specifically challenges a 2002 policy that has been superceded by a regulation which became effective in February 2005. Although the instant case differs from *Yip* and *Pimentel* in that petitioner's eligibility date for CCC placement has been calculated by the BOP, such difference does not save the instant challenge to the 2002 policy from being declared moot. *See Moss v. Apker*, ___ F. Supp. 2d ___, ___, No. 05 CIV. 2676 (VM), 2005 WL 1593016, at *3 (S.D.N.Y. July 6, 2005). As stated in *Moss*: "The February 2005 Policy supercedes the December 2002 Policy.

Consequently, the BOP's determinations concerning [the] transfer request are not being made pursuant to the December 2002 Policy, and [petitioner] can no longer assert that the application of the December 2002 Policy to his transfer request is affecting his rights." *Id.*

Because petitioner challenges only the December 2002 policy of the BOP, the instant action is moot and this Court thus lacks jurisdiction over it. Unlike the challenges in *Moss* and *Levine v. Menifee*, No. 05 CIV. 1902 (RCC), 2005 WL 1384021 (S.D.N.Y. June 9, 2005), the Court cannot construe the instant action as a challenge to the February 2005 policy. In both *Moss* and *Levine*, the petitioner filed a traverse to the response to their petitions in which they specifically challenged the 2005 policy. *See Moss*, 2005 WL 1593016, at *4; *Levine*, 2005 WL 1384021, at *3. Petitioner here has filed no traverse or reply brief or otherwise indicated that he seeks to challenge the February 2005 policy. Although the Court liberally construes *pro se* pleadings, it does not construct claims for *pro se* parties. *See Johnson v. City of Port Arthur*, 892 F. Supp. 835, 840 (E.D. Tex. 1995) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *accord Ashanti v. Cockrell*, No. 3:01-CV-0512-D, 2002 WL 2030721, at *10 (N.D. Tex. Aug. 30, 2002) (findings, conclusions, and recommendation accepted by District Court). Despite having fifteen days to file a reply brief, (*see* Expedited Order to Show Cause), petitioner filed no such brief. The Court should thus decline to construe the instant challenge as an attack on the 2005 policy of the BOP.[3]

---

[3] Should petitioner urge such construction, the Court hereby notifies him that it will fully consider whether to construe this action as a civil action that is subject to the PLRA. If the Court concludes that the instant action should indeed be construed as a non-habeas civil action, this action will be subject to all provisions of the PLRA, including the $250 filing fee associated with general civil actions.

9

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DISMISS** the instant petition for writ of habeas corpus, brought pursuant to 28 U.S.C. § 2241 for lack of jurisdiction.

**SIGNED this 20th day of July, 2005.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE